# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**-vs-**                                                   **Case No. 6:08-cr-206-Orl-22DAB**

**TERRY JEROME CASON**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **DEFENDANT'S MOTION TO SUPPRESS (Doc. No. 20)**
>
> **FILED:**      **December 1, 2008**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Defendant has filed a motion to suppress the principal evidence supporting the charge against him in this case: a firearm which was discovered by a sheriff's deputy during a pat down search. Upon referral from the District Judge, an evidentiary hearing was held January 9, 2009. The government contends that the pat down of Defendant was properly carried out incident to an investigatory stop and detention. Defendant argues that the deputy lacked justification for the stop and frisk and that the investigation was carried out unreasonably, so as to require suppression of the evidence thereby obtained. The charge in this case is unlawful possession of a firearm by a convicted felon, so suppression of the frisk and Defendant's related statements is essentially case dispositive.

**Factual Background**–The government presented testimony from two Orange County Sheriff's Deputies who were involved in the investigation and introduced logs of the investigation as

it proceeded on June 29, 2008. Defendant presented the driver of the bus where Defendant was found by the deputies.

The matter began with Odessa McDonald, who did not testify, reporting to the Sheriff's Department that she had suffered an attack and robbery by an unknown assailant. She reported that a black male wearing a black hat, black shirt and black pants struck her in the head from behind, stole her purse, and fled. No use or possession of any weapon was reported [Govt. Ex. 1]. Later in the morning, although she had reported not getting a good look at the attacker's face, Ms. McDonald notified law enforcement that she spotted him getting on a bus. She described the bus and the clothing worn by the alleged attacker as a red hat, white shirt, and black shorts (a markedly different clothing description from the first report). The alleged attacker was reported to be accompanied by a female.

This information was relayed to patrol officers, and Deputy Benjamin Thorpe (who did testify) quickly located a Lynx bus matching the dispatch. He proceeded to follow the bus and called for back-up assistance for stopping the bus and going forward with the investigation. Deputy Thorpe activated his service lights and pulled the bus over.

At this point, the evidence from Deputy Thorpe and the bus driver, Erick Knowles, differ sharply regarding what occurred on the bus. In his testimony and written report from the day of the arrest, Deputy Thorpe said he entered the bus and informed the driver that he was looking for a suspect. A second deputy entered behind him but was not actively involved. Deputy Thorpe proceeded through the bus, looking at the 15 to 20 passengers to see if anyone matched the general description from the dispatch. He saw the Defendant, who was wearing clothes consistent with Ms. McDonald's second description. Deputy Thorpe testified that the Defendant, who had been sitting with a female in the back seat, stood up unbidden and moved toward the back door of the bus and appeared to be looking for a way out and was argumentative when the Deputy told him that he needed

to talk to him about an investigation. Deputy Thorpe placed the Defendant in handcuffs and removed him from the bus. Deputy Thorpe denied any intention to arrest the Defendant at that point and justified the use of cuffs because of suspicions from the dispatch and Defendant's evasive actions. He denied pulling his firearm. Deputy Thorpe's plan was to detain the Defendant long enough to allow Ms. McDonald to arrive for a show up.

The bus was allowed to leave the scene, and Deputy Thorpe conducted a pat down of Defendant. Upon discovering a hard object near Defendant's waist, Deputy Thorpe lifted Defendant's shirt and found the firearm that is the basis for this prosecution. In the course of Defendant's arrest and transport, he admitted owning that gun and that he was a felon.

Mr. Knowles, the bus driver, gave an account of the activity on the bus very different from that of Deputy Thorpe. Mr. Knowles said that the second officer on the bus brushed past the first and took charge. That officer pulled his sidearm and ordered the Defendant to stand up or be shot. The Defendant was then handcuffed and removed through the back door of the bus when the driver activated the door at the officer's request. The female accompanying the Defendant apologized to the driver for the trouble, and the bus left the scene. Mr. Knowles, who watched events first using the interior mirror and then by swivelling in his seat, stated that the Defendant had done nothing until the deputy shouted at him and made no evasive moves.

**Legal Framework**–The propriety of a warrantless search pursuant to an investigatory stop, detention and frisk has been considered in numerous cases dating from the Supreme Court's seminal decision in *Terry v. Ohio,* 392 U.S. 1 (1968). A brief seizure or investigatory detention of an individual is lawful if based on reasonable suspicion. Reliable information from a citizen informant may create reasonable suspicion. *Alabama v. White,* 496 U.S. 325 (1990). Under *Terry* and its

progeny, officers engaged in an investigatory stop may conduct a limited pat down or frisk of a suspect's outer clothing to check for weapons.

**Analysis**–Defendant raises questions about the reliability of Ms. McDonald's complaint and identification, based on issues of her background an her self-reported limited view of her assailant.[1] For purposes of establishing the bona fides of the investigation and reasonable suspicion justifying a stop, these matters are of little moment. Individuals with criminal records are no less likely to be victims of crime and are entitled have their complaints investigated. Ms. McDonald's second description of her assailant was sufficiently detailed and certain as to allow law enforcement to act upon it.

This conclusion provides ample basis for stopping the bus to look for someone matching that description. Defendant does not argue that the deputy's selection of Defendant as a match for the second description was unreasonable, as he did in fact match the general description and other characteristics. Having found the Defendant as part of the investigation, the deputies are permitted to hold or detain him for a reasonable period in furtherance of the investigation.

The propriety of the frisk itself must also be analyzed. A pat down or frisk is a search that is not authorized (absent a warrant) in every case of an investigatory stop. However, when law enforcement encounters, with reasonable basis, someone suspected of a violent crime (including one not involving a weapon), concern for officer and public safety support a protective frisk. There is no indication in this case that the frisk exceeded a protective scope or that it was undertaken as a pretext.

---

[1] Defendant specifically points to the changes in Ms. McDonald's description of the assailant's clothing as creating a contradiction. However, given the passage of time between her two identifications, it is just as plausible that the assailant changed his clothes. The Court does not view this as an inherent contradiction.

This situation is readily distinguishable from stops that do not involve recent violent conduct as to which the detainee is a suspect.

One issue remains. An investigatory stop may become so extended or invasive as to amount to an arrest (which would require probable cause), even where the officer did not intend to make an arrest. This point is argued by Defendant only in a footnote without any reference to the evidence in this case. Leaving aside the events on the bus, the cuffing, frisking and holding of the Defendant while waiting for Ms. McDonald to arrive for a show up is in within the bounds of a permissible investigatory stop, even if Defendant was not free to leave.

Considering the additional circumstances of Defendant's actual apprehension is difficult because of the disparate accounts of events.[2] Neither version, as expressed by the witnesses, is entirely satisfactory. It seems procedurally and physically unlikely that a second officer, not the one leading the response to the dispatch, would force himself [3] past the first officer in the confines of the bus entry area as described by the driver. On the other hand, some of the details provided by Deputy Thorpe regarding the back door of the bus are inconsistent with how that door operates.

The Court surmises that the actual events were somewhat different than either account. Given the highly charged scene and speed of events, recollection by both trained and unbiased observers may not be fully accurate.

For present purposes, it not necessary to resolve these discrepancies. Even taking driver Knowles' version as essentially correct, the stop and apprehension of Defendant did not amount to an arrest. The aggressive scenario described by the driver might not be considered best police practice

---

[2]The difficulty is exacerbated because both sides failed to call available witnesses whom they might have been expected to use to support their respective version. No testimony was presented from the second deputy or from Defendant's female companion.

[3]The evidence is that Officer Sophie is very large.

(given the number of bystanders and the confined space of a bus), but it does not alter the basic sequence: Defendant was seen to match the description from the dispatch, was told there was an investigation and was held for that investigation.

Taking all the circumstances into account, the stop and frisk of Defendant that resulted in discovery of the firearm did not exceed constitutionally permissible bounds. The motion to suppress should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Orlando, Florida on this 23rd day of January, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy