**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**-vs-**                                                                                          **Case No. 6:08-cr-206-Orl-22DAB**

**TERRY JEROME CASON**
_____

## ORDER

This cause comes before the Court for consideration of Magistrate Judge David A. Baker's January 23, 2009 Report and Recommendation ("R&R") (Doc. No. 36); Defendant Terry Jerome Cason's ("Cason") Objections to Magistrates Report and Recommendation (Doc. No. 42), filed on February 13, 2009; and the United States' Response in Opposition (Doc. No. 43), filed on February 23, 2009.

### I. INTRODUCTION

Cason filed a motion to suppress evidence discovered by a sheriff's deputy during a pat down search. (Doc. No. 20.) The United States filed a response in opposition to Cason's Motion. (Doc. No. 23.) On January 8, 2009, Judge Baker held a hearing on Cason's Motion. During the hearing, Judge Baker heard testimony from several individuals. The United States called Deputy Sheriff Benjamin Thorpe of the Orange County Sheriffs' Office ("OCSO"). Defense counsel called Deputy Sheriff Timothy Styer and bus driver, Erick Knowles. After considering the parties' pleadings and the testimony at the hearing on the motion to suppress, Judge Baker issued an R&R recommending that the Court deny Williams' motion. (Doc. No. 36.)

### II. BACKGROUND

The Court hereby adopts Judge Baker's statement of facts as provided in the R&R, which states:

> The matter began with Odessa McDonald, who did not testify, reporting to the Sheriff's Department that she had suffered an attack and robbery by an unknown assailant. She reported that a black male wearing a black hat, black shirt and black pants struck her in the head from behind, stole her purse, and fled. No use or possession of any weapon was reported. Later in the morning, although she had reported not getting a good look at the attacker's face, Ms. McDonald notified law enforcement that she spotted him getting on a bus. She described the bus and the clothing worn by the alleged attacker as a red hat, white shirt, and black shorts (a markedly different clothing description from the first report). The alleged attacker was reported to be accompanied by a female.
>
> This information was relayed to patrol officers, and Deputy Benjamin Thorpe (who did testify) quickly located a Lynx bus matching the dispatch. He proceeded to follow the bus and called for back-up assistance for stopping the bus and going forward with the investigation. Deputy Thorpe activated his service lights and pulled the bus over.
>
> At this point, the evidence from Deputy Thorpe and the bus driver, Erick Knowles, differ sharply regarding what occurred on the bus. In his testimony and written report from the day of the arrest, Deputy Thorpe said he entered the bus and informed the driver that he was looking for a suspect. A second deputy entered behind him but was not actively involved. Deputy Thorpe proceeded through the bus, looking at the 15 to 20 passengers to see if anyone matched the general description from the dispatch. He saw the Defendant, who was wearing clothes consistent with Ms. McDonald's second description. Deputy Thorpe testified that the Defendant, who had been sitting with a female in the back seat, stood up unbidden and moved toward the back door of the bus and appeared to be looking for a way out and was argumentative when the Deputy told him that he needed to talk to him about an investigation. Deputy Thorpe placed the Defendant in handcuffs and removed him from the bus. Deputy Thorpe denied any intention to arrest the Defendant at that point and justified the use of cuffs because of suspicions from the dispatch and Defendant's evasive actions. He denied pulling his firearm. Deputy Thorpe's plan was to detain the Defendant long enough to allow Ms. McDonald to arrive for a show up.

> The bus was allowed to leave the scene, and Deputy Thorpe conducted a pat down of Defendant. Upon discovering a hard object near Defendant's waist, Deputy Thorpe lifted Defendant's shirt and found the firearm that is the basis for this prosecution. In the course of Defendant's arrest and transport, he admitted owning that gun and that he was a felon.
>
> Mr. Knowles, the bus driver, gave an account of the activity on the bus very different from that of Deputy Thorpe. Mr. Knowles said that the second officer on the bus brushed past the first and took charge. That officer pulled his sidearm and ordered the Defendant to stand up or be shot. The Defendant was then handcuffed and removed through the back door of the bus when the driver activated the door at the officer's request.[1] The female accompanying the Defendant apologized to the driver for the trouble, and the bus left the scene. Mr. Knowles, who watched events first using the interior mirror and then by swivelling in his seat, stated that the Defendant had done nothing until the deputy shouted at him and made no evasive moves.

In his R&R, Judge Baker found that the stop and apprehension of Cason did not amount to an arrest. (Doc. No. 36 p. 5.) Finding that the stop and frisk of Cason did not exceed constitutionally permissible bounds, Judge Baker recommended that the Court deny Cason's Motion. (*Id*. at 6.)

### III. ANALYSIS

### A. Standard of Review

When a party objects to the magistrate's findings, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Veteto*, 701 F.2d 136, 140 (11th Cir. 1983) (indicating that although the court must make a de novo determination, a de novo hearing is not required). A de novo determination requires the district judge to consider factual

---

[1] It should be noted that Deputy Thorpe testified that the back door of the bus was open. (Doc. No. 40 pp. 40-41.)

issues on the record independent of the magistrate judge's R&R. *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1). "If the district court concurs with the magistrate's recommendation, it need not hold another evidentiary hearing, even where the credibility of certain witnesses might be an important factor in making the determination." *Veteto*, 701 F.2d at 140.

### B. Motion to Suppress Evidence

In his Objections to Judge Baker's R&R, Cason argues that Thorpe's weapons frisk was not supported by a reasonable suspicion that Cason was presently armed and dangerous. (Doc. No. 42 p. 15.)[2] In response, the United States argues that the frisk was justified by a reasonable suspicion that Cason presented a risk to others. (Doc. No. 43 p. 2.)

The Supreme Court's ruling in *Terry v. Ohio*, 392 U.S. 1 (1968), governs the disposition of this motion. Courts have held that under *Terry* a law enforcement officer "with reasonable suspicion of criminal activity may detain a suspect briefly for questioning aimed at confirming or dispelling his suspicions." *United States v. Campa*, 234 F.3d 733, 737 (1st Cir. 2000). Courts must consider the totality of the circumstances to determine the reasonableness of an officer's suspicion of criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In particular, courts must determine if the officer possessed "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] that intrusion." *Terry*, 392 U.S. at 21.

---

[2]Cason does not object to the R&R's conclusion that the officers had reasonable suspicion to conduct an investigatory stop under *Terry*. (Doc. No. 42 p. 5.)

In addition to allowing an officer to detain a suspect for brief questioning, *Terry* also permits a pat-down search for weapons if the officer has an objectively reasonable belief that the individual is armed and dangerous. *Id. Terry* pat-down searches are "strictly limited to that which is necessary for the discovery of weapons." *Id*. at 26. If the search exceeds "what is necessary to determine if the suspect is armed, its fruits will be suppressed." *Campa*, 234 F.3d at 738 (holding that removal of a wallet and other bulging items from a suspect's person, which were "readily identifiable by touch as *non*-weapons," exceeded the limits of pat-down searches authorized by *Terry*).

The Court credits Deputy Thorpe's testimony that based on his experience he has found that just because an assailant did not use a weapon to carry out a robbery does not mean that the assailant is not armed. (Doc. No. 40 pp. 39-40.) The Court notes that there is conflicting testimony as to the sequence of events surrounding Cason's apprehension on the bus. For example, Thorpe's testimony that Defendant took a bladed stance or made some evasive actions is directly contradicted by the testimony of Knowles, a neutral witness. Even taking Knowles' version as correct, however, the Court finds that Thorpe had an objectively reasonable belief that Cason was armed and dangerous because he reasonably suspected that Cason had just committed a violent felony. *See Terry*, 392 U.S. at 33 (Harlan, J., concurring) ("the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence"). Thus, Deputy Thorpe was justified under *Terry* to ensure his safety by conducting a pat-down and search of Cason's person.

Further, Cason argues that the manner in which the deputies conducted the investigatory stop was so invasive as to amount to an arrest, which was unjustified as the officers lacked probable cause. (Doc. No. 42 pp. 17-21.) Specifically, Cason argues that the fact that the deputies boarded a crowded city bus with their guns drawn was unreasonable under the totality of the circumstances.

(*Id.*) In response, the Untied States argues that the deputies stayed within the bounds of an investigatory detention. (Doc. No. 43 pp. 3-4.)

Assuming that the manner in which the officers boarded the bus did in fact turn the investigative stop into an arrest, the deputies committed no constitutional violation because they had probable cause to arrest Cason. Probable cause to arrest exists where "the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997) (internal quotation omitted). It remains uncontested in the present case that Cason matched the specific description given by Ms. McDonald[3] and the stop occurred only several minutes after Ms. McDonald's identification. *See Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998) (officer entitled to rely on victim's identification and statements as support for probable cause).

Cason may argue that the deputies lacked probable cause to make an arrest because Ms. McDonald's identification was not reliable based upon (1) her self-reported limited view of her assailant, and (2) the changes in her description of the assailant's clothing. While these facts might have created some doubt for the deputies in the context of obtaining a conviction against Cason, Ms. McDonald's identification was sufficiently trustworthy to justify their reliance. Police officers making arrests "deal with probabilities," *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990), and the salient facts that were known to the deputies suggested that it was more probable than not

---

[3]Cason was riding Lynx bus #20, he was in the presence of a female companion, and was wearing a red hat, white shirt, and black shorts. (Doc. No. 40 pp. 17-18.)

that Cason was the assailant. The Court therefore holds that the deputies had probable cause to arrest Cason. Accordingly, the Court denies Cason's Motion to Suppress.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. The Magistrate Judge's January 23, 2009 Report and Recommendation (Doc. No. 36) is APPROVED and ADOPTED.

2. The Defendant's Objections to the Order (Doc. No. 42), filed on February 13, 2009, are OVERRULED.

3. The Defendant's Motion to Suppress Stop, Detention and Arrest of Defendant and Motion to Suppress Statements and Request for an Evidentiary Hearing (Doc. No. 20), filed on December 1, 2008, is DENIED.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 27, 2009.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Pro Se Party
Magistrate Judge
United States Marshals Service
United States Probation Office
United States Pretrial Services